EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,

v.

NECHES BUTANE PRODUCTS COMPANY, Defendant-Appellee.

No. 81–2347.

United States Court of Appeals, Fifth Circuit.

April 20, 1983.

amicus curiae (Equal Employment Advisory Council).

Before RUBIN, RANDALL and JOLLY, Circuit Judges.

RANDALL, Circuit Judge:

This Equal Employment Opportunity Commission subpoena enforcement action comes to us on an interlocutory appeal from the Eastern District of Texas. Since we do not have jurisdiction to reach the merits, this appeal is dismissed. We do not consider the Commission's petition, in the alternative, for a writ of mandamus because the Commission makes no effort to comply with Federal Rule of Appellate Procedure 21, which, in the absence of extraordinary circumstances not present here, controls mandamus actions in the circuit courts of appeals.

## I. THE FACTS.

The events leading to this suit began in late 1978 or early 1979 when the Commission's Houston office submitted workforce profiles of forty-six Houston businesses to the Commission's Office of Systemic Programs for computer analysis. The resulting study showed that, of the forty-six employers, Neches Butane Products Company ranked second, eighth, and thirteenth in its underemployment of blacks, hispanics, and women, respectively. On the basis of this study, the Houston office recommended that a Commissioner's charge be issued against the Company under sections 706 and 707 of title VII, 42 U.S.C. §§ 2000e–5, –6 (1976). The Office of Systemic Programs concurred in the recommendation, which was then randomly submitted to Commissioner Rodriguez for review. *See* E.E.O.C.Compl.Man. (CCH) ¶ 563, § 16.3(e) (1979) (proposed charges are submitted to commissioners on a "rotating basis").[1]

Warren Duplinsky, Atty., E.E.O.C., Washington, D.C., for plaintiff-appellant.

Douglas E. Hamel, J.M. Hopper, Houston, Tex., for defendant-appellee.

Douglas S. McDowell, Thomas R. Bagby, Robert E. Williams, Washington, D.C., for

1. Because this paragraph concerns matter still under seal, we have taken it almost verbatim from the Commission's brief.

On July 3, 1979, Commissioner Rodriguez signed and verified the charge, which alleged that the Company had violated and continued to violate Title VII of the Civil Rights Act of 1964 by discriminating against women and minorities in recruitment, hiring, job assignment, promotion, and other terms and conditions of employment. The Commission's investigation did not go smoothly. After the Commission and the Company tried but failed to agree on what Company records the Commission was to see, the Commission's Houston office issued a subpoena duces tecum. The subpoena requested various documents concerning the Company's hiring and promotional practices since 1972.

When Neches still refused to comply, the Commission brought a subpoena enforcement action in the Eastern District of Texas pursuant to section 710 of title VII, 42 U.S.C. § 2000e–9 (1976). The Company defended its refusal primarily on the ground that the Commission's discrimination action had been wrongfully instituted: the Company alleged that Commissioner Rodriguez had signed the charge because he had been improperly influenced by the League of United Latin American Citizens, which, in turn, had been influenced by a disgruntled Neches employee (A.J. Albarado) who wished to pursue a personal vendetta against the Company. In order to substantiate its allegations, the Company requested various documents concerning the Commission's decision to bring the charge, and asked to take Commissioner Rodriguez's deposition. The district court noted that the Company had apparently raised a substantial question concerning the Commission's good faith in bringing the charge, and therefore granted the Company's motion to compel discovery.

This time it was the Commission's turn to refuse to comply with the district court's discovery order. The Company responded by moving that the sanction of an indefinite suspension be imposed against the Commission; the Commission replied by stating that sanctions were entirely inappropriate or, in the alternative, that if a sanction was appropriate, the most appropriate was not a mere suspension but rather an outright dismissal—which at least would have had the virtue of being directly appealable to the Fifth Circuit. The district court then ruled on July 1, 1981, that the Commission should not be allowed to proceed with its subpoena enforcement action until the Company was afforded an opportunity to take discovery. The Company, said the district court, should have a chance to inquire into the legitimacy of the Commission's motives in bringing the discrimination charge in the first place. The district court expressly refused to dismiss the action as the Commission had requested and instead "stay[ed] the [subpoena enforcement] proceedings until such time as the EEOC complies with the Court's [discovery] Order."

The Commission then filed a timely notice of appeal, which, in its pertinent entirety, read as follows:

Notice is hereby given that Plaintiff, Equal Employment Opportunity Commission, hereby appeals to the United States Court of Appeals for the Fifth Circuit from the Memorandum Opinion and Order of this Court entered in this action on the 1st day of July, 1981, holding that the proceedings in this action are indefinitely stayed pending the taking of the deposition of Commissioner Armando Rodriguez.

1 Record at 321. The Commission now asks us to hold, first, that we have jurisdiction to reach the merits of this appeal, and second, that the district court erred in ordering Commissioner Rodriguez to submit to discovery as a condition precedent to the enforcement of the Commission's subpoena.

## II. APPELLATE JURISDICTION.

If we treat this case as an appeal (rather than as a petition for a writ of mandamus), we could theoretically reach the merits by proceeding either directly under 28 U.S.C. § 1291 or under the collateral order doctrine. We consider each approach in turn.

### A. Section 1291.

The threshold issue on this appeal is whether we have the power to inquire into

our jurisdiction, given that a motions panel of this court has already denied the Company's motion to dismiss this suit for want of jurisdiction.

█ In this circuit, as in many others, a preliminary motion to dismiss for want of jurisdiction is submitted to a motions panel for disposition, often without opinion. *See* United States Court of Appeals for the Fifth Circuit, *Internal Operating Procedures,* § 4(e) (1981); *United States v. Bear Marine Services,* 696 F.2d 1117, 1119 & n. 4 (5th Cir.1983). A denial by a motions panel of a motion to dismiss for want of jurisdiction, however, is only provisional. With the benefit of full briefing and (as was the case here) oral argument, the panel to which the case falls for disposition on the merits may conclude that the motions decision was improvident and should be reconsidered.[2]

█ We think that such reconsideration is in order here. The parties each agree, as they must, that we should first consider whether we have jurisdiction to review the stay order as one that has become "final" within the meaning of 28 U.S.C.A. § 1291 (West Supp. June, 1982).[3] On this point, we believe ourselves bound by a controlling precedent to conclude that the order is not "final." In *United States v. Richardson,* 204 F.2d 552 (5th Cir.1953), the defendant alleged that the government's condemna- tion action was improperly motivated, and asked to take the Secretary of the Army's deposition. The district court rejected the Secretary's claim of privilege and ordered an indefinite stay of the government's condemnation action until such time as the Secretary should appear for the deposition. The stay then lasted over thirteen years, and terminated only when the government apparently consented to the deposition. *United States v. 2,606.84 Acres of Land,* 432 F.2d 1286, 1288 n. 2 (5th Cir.1970), *cert. denied,* 402 U.S. 916, 91 S.Ct. 1368, 28 L.Ed.2d 658 (1971). The conclusion that the *Richardson* case controls the present one seems unavoidable.[4]

## B. The Cohen *Collateral Order Doctrine.*

Since the stay order in this case is not "final" within the ordinary interpretation of section 1291, the determinative jurisdictional issue is whether the order is appealable as a "collateral order" under the rule first established in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), and most recently applied by the Supreme Court in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). The Commission claims that it is and the

---

**2.** *CFTC v. Preferred Capital Inv. Co.,* 664 F.2d 1316, 1318 (5th Cir.1982) ("A panel of this court denied the motion [to dismiss for want of jurisdiction]. The motion is, nonetheless, 'also subject to scrutiny by the oral argument panel to whom the case falls.'") (citations omitted); *accord, Green v. Department of Commerce,* 618 F.2d 836, 838–39 (D.C.Cir.1980) (same); *Western Elec. Co. v. Milgo Elec. Corp.,* 568 F.2d 1203, 1206 & n. 6 (5th Cir.) (same), *cert. denied,* 439 U.S. 895, 99 S.Ct. 255, 58 L.Ed.2d 241 (1978); *EEOC v. International Longshoremen's Ass'n,* 511 F.2d 273, 276 & n. 5 (5th Cir.) (same), *cert. denied,* 423 U.S. 994, 96 S.Ct. 421, 46 L.Ed.2d 368 (1975); *Austracan, (U.S.A.) Inc. v. M/V Lemoncore,* 500 F.2d 237, 239 (5th Cir.1974) (same); *cf. Bear Marine, supra,* 696 F.2d at 1120 n. 6 ("Our holding that we are not bound by the motions panel's grant of leave to appeal is consistent with this court's treatment of similar issues arising under 28 U.S.C. § 1291."); *Potomac Passengers Ass'n v. Chesapeake & O. Ry.,* 520 F.2d 91, 95 n. 22 (D.C.Cir. 1975) (prior decision was full adjudication on the merits, and not mere two-line order of a motions panel).

The only case in this circuit that appears to hold to the contrary is *Branch v. Phillips Petroleum Co.,* 638 F.2d 873 (5th Cir.1981). *Branch* does state that one panel of this court binds another, 638 F.2d at 877, but that rule does not apply where a motions panel has provisionally ruled on a jurisdictional issue; moreover, *Branch* itself contains an almost three-page discussion of jurisdiction, all of which would have been unnecessary if the order of the motions panel had been binding.

**3.** The Commission did not request the district court to certify its order to this court under 28 U.S.C. § 1292(b) (1976).

**4.** An entire section of the Company's brief is entitled "*United States v. Richardson:* The Stay Sanction Under Rule 37 Is Not An Appealable Order." The Commission, on the other hand, has neither cited nor discussed the case.

Company claims that it is not. We agree with the Company.

■ The "collateral order" doctrine is generally said to have four elements, each of which must be satisfied before an interlocutory appeal can be taken. First, the order must finally dispose of a matter so that the district court's decision may not be characterizable as "tentative, informal or incomplete;" second, the question presented must be "serious and unsettled;" third, the order must be "separable from, and collateral to, rights asserted" in the principal suit; and fourth, there should generally be a risk of important and "probably irreparabl[e]" loss if an immediate appeal is not heard. 337 U.S. at 546–47, 69 S.Ct. at 1225–26. *See* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3911, at 470–71 (1976 & Supp.1983). The Supreme Court recently summarized these four requirements in the following language:

> To come within the "small class" of decisions excepted from the final-judgment rule by *Cohen,* the order [1] must conclusively determine the disputed question, [2] resolve an important issue [3] completely separate from the merits of the action, and [4] be effectively unreviewable on appeal from a final judgment.

*Moses Cone, supra,* 103 S.Ct. at 935 (quoting *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978)) (footnote omitted). The problem, as both parties appear to recognize, is that discovery orders "are ordinarily interlocutory" and hence usually not appealable even under the *Cohen* doctrine. *See* 15 C. Wright, A. Miller & E. Cooper, *supra,* § 3914, at 567.

■ We assume, without deciding, that the district court's order satisfies the second and third elements of the *Cohen* test—that the case presents an important question of first impression in this circuit, and that the discovery order is collateral to the merits of the principal case. It is enough to say here that the order satisfies neither the fourth nor the first *Cohen* requirement.

Discovery, as virtually every litigant quickly learns, is often annoying, time-consuming, and expensive. It is equally indisputable that it is extremely difficult to obtain a reversal on a discovery matter once an entire case has proceeded to final judgment; however, "that by-product of confining appeals to final judgments," as the Second Circuit observed some years ago, "has never been regarded as calamitous." *American Express Warehousing, Ltd. v. Transamerica Insurance Co.,* 380 F.2d 277, 281 (2d Cir.1967). *Accord,* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2006 (1970 & Supp.1983). The fourth part of the *Cohen* test requires considerably more than either expense or near irreversibility—qualities common to virtually all discovery orders. *Cohen* requires some showing of *extraordinary* harm, and from the various *in camera* materials that the Commission has submitted to us—and considering the presentations made in the briefs and at oral argument—we think that it is fair to conclude that the only important and "probably irreparabl[e]" loss the Commission would suffer if an interlocutory appeal were refused would be the establishment of a "bad" precedent. The Commission thinks that its commissioners should be deposable only in the most extreme circumstances, lest a motion to depose them should become a standard delaying tactic for companies under investigation for title VII violations. As the Company observes in its brief, this argument amounts to "nothing more than [a] naked claim[ ] of administrative convenience." Company Brief at 21. This is not, we think, the stuff of which *Cohen* collateral orders are made.

We also agree with the Company's contention that the district court's decision is "tentative, informal or incomplete." 337 U.S. at 546, 69 S.Ct. at 1225. The Commission's first counterargument—that since it will *never* comply with the discovery order, the district court's disposition is absolutely final—is no more than an obvious bootstrap. A litigant's own refusal to comply with an interlocutory order could hardly render that order final and hence appealable. The Commission's second counterargument is

more troubling. When it appeared that the district court might suspend the proceedings pending the Commission's compliance with the Company's discovery request, the Commission followed the usual procedure of moving that a sanction of outright dismissal be imposed. Such a dismissal would be final, and hence appealable. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958). But the district court refused the Commission's request to have its own case dismissed, and the Commission now argues that this refusal itself somehow creates the requisite degree of finality.

We disagree. The whole purpose of moving for an outright dismissal of one's own case is to obtain a final, appealable order. If that motion is denied (as it was here), the interlocutory character of the suspension remains. The Commission's argument really amounts to no more than an assertion that the district court should not have refused to dismiss the case. The district court may well have erred in so refusing, but we cannot see how that fact could affect our deliberations here: if the Commission thought that the district court had made a mistake, it could have asked the court to certify the refusal-to-dismiss question under 28 U.S.C. § 1292(b) (1976) or it could have petitioned for mandamus to compel the court to dismiss the action. Having done neither of those things, the Commission cannot now complain if we are foreclosed from the treating the matter as though it had. The district court's refusal to dismiss the case to create a final order, in a word, means that the indefinite suspension order remains not final, and hence unappealable.

### C. The Effect of Moses Cone on Section 1291 and Cohen.

We do not think that the Supreme Court's recent decision in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, —— U.S. ——, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), undermines the above analysis. *Moses Cone* does contain language that would seem to support a different result in the present case, but that superficial similarity between *Moses Cone* and this case is misleading.

Factually and procedurally, *Moses Cone* is virtually unique. The case grew out of a dispute between a hospital (Moses Cone) and the firm that it had hired to do the construction work on additions to its building (Mercury). Because of various delays during construction allegedly caused by the hospital's dilatoriness, Mercury claimed that it was owed money for extended overhead, and that the question of how much it was owed was arbitrable according to the parties' arbitration agreement and the federal Arbitration Act. To prevent Mercury from pursuing this claim, Moses Cone filed a declaratory judgment action in state court and secured an ex parte injunction forbidding Mercury from taking any further steps directed toward arbitration. After successfully moving in state court to have the injunction dissolved, Mercury filed an action in federal district court seeking an order compelling arbitration under section 4 of the Arbitration Act. Moses Cone quickly counterattacked. On a motion from the hospital, the district court stayed the federal proceedings pending the state court's resolution of the arbitrability issue. Mercury then appealed the stay before the Fourth Circuit, which, in an en banc ruling, held that the stay was "final" within the meaning of section 1291, and that the district court should dissolve the stay and enter an order compelling arbitration under the Act. The Supreme Court affirmed, holding that the stay order was appealable under both section 1291 and *Cohen* and that the district court should order arbitration.

Of these three Supreme Court holdings, that under section 1291 was on its face the most limited. Acting under the abstention-like doctrine first announced in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the district court had only stayed, rather than dismissed the fed-

eral case.[5] But this "stay," the Supreme Court held, put Mercury "as effectively out of court" as it would have been had the federal case been dismissed outright: because the "issue of arbitrability was the only substantive issue present in the federal suit ... a stay of the federal suit pending resolution of the state suit meant that there would be no further litigation in the federal forum; the state court's judgment on the issue would be res judicata." 103 S.Ct. at 934. In reaching this conclusion, the Court drew a sharp distinction between a case like *Moses Cone,* where the plaintiff could not under any circumstances continue with its federal litigation, and a case like *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 470, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978), which turned not on *legal* impossibility, but rather on *practical* impossibility ("tactical economic significance ... tantamount to a 'death knell' for the entire case"). 103 S.Ct. at 934 n. 11. "There is an obvious difference," the Court went on to note in *Moses Cone,* "between a case in which the plaintiff himself *may choose* not to proceed, and a case in which the district court *refuses to allow* the plaintiff to litigate his claim in federal court." 103 S.Ct. at 934 n. 11 (emphasis in original). The fact that, from a practical point of view, the choice may be an empty one (hence, the term "death knell") is not enough. Finally, and to underscore the exceedingly limited nature of its holding under section 1291, the Court said, "We hold only that a stay order is final when the sole purpose and effect of the stay is precisely to surrender jurisdiction of a federal suit to a state court." 103 S.Ct. at 935 n. 11. The section 1291 holding in *Moses Cone* was thus expressly limited to stays entered pursuant to *Colorado River* or similar abstention or abstention-like doctrines.

We think that the Court's *Cohen* holding was equally limited. After quoting the re-

statement of the *Cohen* criteria given in *Coopers & Lybrand, supra,* 437 U.S. at 468, 98 S.Ct. at 2457, the Court noted that it had no trouble in finding that *Moses Cone* presented an important and collateral question (the second and third *Cohen* considerations). 103 S.Ct. at 935. The Court also had little difficulty in concluding that the question would be "entirely unreviewable" if not immediately appealed: "Once the state court decided the issue of arbitrability, the federal court would be bound to honor that determination as res judicata." 103 S.Ct. at 935. The immediate prospect of an adverse and final ruling on the merits clearly presented the most extreme example of the kind of important and irreparable loss that would justify an otherwise impermissible interlocutory appeal (the fourth *Cohen* consideration). The court last addressed the conclusively-determine-the-disputed-question part of the *Cohen* test, and concluded that the district court's determination was conclusive because there was "no basis to suppose that the District Judge contemplated any reconsideration of his decision to defer to the parallel state-court suit." 103 S.Ct. at 935. Nothing further remained to be decided and no factual contingencies remained to be fulfilled. All four elements of the *Cohen* test were therefore satisfied, and the district court's *Colorado River* order was held appealable under *Cohen* as well as under section 1291 directly.

In the present case, on the other hand, there is a very significant factual contingency. The Commission could decide to comply with the district court's discovery order, thus rendering the present appeal of the stay order moot. The fact that, as a practical matter, the Commission is unlikely to change its mind does not matter. A case in which "the plaintiff himself *may choose* not to proceed" is simply not the same as one in which "the district court *refuses to*

---

**5.** While a case is generally dismissed under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and generally stayed under *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the Court noted in *Moses Cone* that it had "no occasion

in this case to decide whether a dismissal or a stay should ordinarily be the preferred course of action when a district court properly finds that *Colorado River* counsels in favor of deferring to a parallel state-court suit." 103 S.Ct. at 943.

*allow"* the plaintiff to litigate in federal court, 103 S.Ct. at 934 n. 11 (emphasis in original); furthermore, any other view of the case might permit *any* disgruntled deponent to appeal a discovery matter immediately through the simple expedient of declaring an unalterable intention not to say another word to his interlocutors. As already pointed out above, *Cohen*—unlike court-ordered dismissals under *Procter & Gamble, supra,* 356 U.S. at 677, 78 S.Ct. at 983—does not reward uncooperative litigants with an appealable order. *See* Section II.B, *supra.*

The present case also differs from *Moses Cone* under the effectively-unreviewable-on-appeal-from-a-final-judgment part of the *Cohen* test. In *Moses Cone,* the res judicata effect of the state proceedings meant that the denial of an immediate appeal would end the federal case. There would be no more merits over which to litigate. The "effectively unreviewable" element in the present case, on the other hand, does not differ from the probable unreviewability of virtually any discovery order. *See, e.g.,* 8 C. Wright & A. Miller, *supra,* § 2006 (section entitled "Appellate Review of Discovery Orders"). The Commission is not presented with the prospect of any immediate disaster. *Cf. Southern Methodist University Association of Women Law Students v. Wynne & Jaffe,* 599 F.2d 707, 711–12 (5th Cir.1979) (order compelling discovery of anonymous plaintiffs' names in title VII suit appealable under *Cohen*). The prospect of annoying and quite possibly improper discovery requests in future cases similar to this one does not constitute the kind of immediate and important injury contemplated by *Cohen* and so clearly present in *Moses Cone.*

*Moses Cone* was unique because the district court's *Colorado River* stay order put the plaintiff "effectively out of court" and kept the means for returning to court entirely beyond the plaintiff's control. Here, on the other hand, the means for returning to court and continuing with the case—compliance with the district court's discovery order—are entirely within the Commission's own control. The present case also does not

present the Commission with the possibility of an important and irreparable res-judicata-mandated loss on the merits of the principal case. Indeed, the only real point of commonality between *Moses Cone* and this case appears to be in the common use of the word "stay" in some *Colorado River* orders and in discovery sanctions entered pursuant to rule 37(b)(2)(C) of the Federal Rules of Civil Procedure.

Justice Rehnquist's dissent in *Moses Cone* warned the majority that its approach could disrupt "not only ... cases nearly identical to this but ... cases which the ingenuity of counsel disappointed by a district court's ruling can analogize to this one." 103 S.Ct. at 945. The majority both implicitly and explicitly responded to Justice Rehnquist's concerns by casting its jurisdictional holdings as narrowly as possible. *See, e.g.,* 103 S.Ct. at 934 n. 11 (explicit response). In light of this shared concern for certainty expressed by both the majority and the dissent in *Moses Cone,* we see no reason to take the jurisdictional holdings in that case and apply them entirely out of the factual context in which they were rendered.

## III. MANDAMUS.

■ Our conclusions under section 1291 and *Cohen* do not necessarily preclude us from reaching the merits of the present attempted appeal. The Commission has also urged us to treat this appeal, in the alternative, as a petition for a writ of mandamus to compel the district court to vacate its discovery order and stay.

The Company argues that we cannot reach the question whether mandamus would be appropriate in this case because, first, there is no petition for mandamus anywhere in this case, and second, even if there were, it would not matter because no one has been served with it in accordance with rule 21 of the Federal Rules of Appellate Procedure. The Commission does correctly state that it is fairly common practice for an appellant to file an appeal and, in the alternative, a petition for a writ of mandamus, but all of the cases that the Commis-

sion cites for that proposition had actual petitions for mandamus that were actually served on all of the parties. *See United States v. Igoe,* 331 F.2d 766, 768 (7th Cir. 1964) ("The petition for writ of mandamus was filed with the government's brief on appeal."); *United States v. Lane,* 284 F.2d 935, 937 (9th Cir.1960) (same); *but cf. Hines v. d'Artois,* 531 F.2d 726, 732 & n. 10 (5th Cir.1976) (case would have been citable for the contrary position had not the relevant portion of the opinion been dictum). The Company's position, in other words, appears to be that a government agency—which is represented by competent attorneys who regularly practice before this court—should not be able to petition for a writ of mandamus without writing any petition, without serving anything even arguably construable as such on the district court (the nominal defendant in a mandamus action), and without paying any attention at all to the directly applicable federal rule of appellate procedure.

Again, we agree with the Company. Under circumstances such as those present here—and we emphasize that these circumstances do not even approach the extraordinary—a mandamus petitioner may not fail to comply with rule 21 without providing an adequate excuse.[6] We do not believe that it would be proper for us to consider today whether we would grant a petition for a writ of mandamus when no petition has been presented to us.

If the Commission desires us to consider whether a writ should issue in these proceedings, it should file an appropriate petition with this court within thirty days.[7] Any such petition will be referred to this panel. We express no opinion upon how we would view such a petition or, if we decided to grant it, how we would dispose of the merits of the case.

This appeal is accordingly DISMISSED.

6. Despite the fact that the Company's brief discusses rule 21 extensively, neither of the Commission's briefs even cites the rule.

7. *See* Fed.R.App.P. 21(a); Local Rule 12. If the Commission chooses to submit such a petition, it need not resubmit material already filed earlier in these proceedings.