United States Court of Appeals,

Fifth Circuit.

No. 91–2800.

UNITED STATES of America, Plaintiff,

v.

Bruce C. MOATS, et al., Defendants,

REPSA FABRICACION, S.A., Intervenor–Third Party Plaintiff–Appellee,

v.

PETROLEOS MEXICANOS (PEMEX), Third–Party Defendant–Appellant.

June 4, 1992.

Appeal from the United States District Court for the Southern District of Texas.

Before BROWN, KING, and WIENER, Circuit Judges.

KING, Circuit Judge:

Petroleos Mexicanos (Pemex), the Mexican national oil company, appeals from a district court order holding that the Foreign Sovereign Immunities Act (FSIA)[1] does not shield it from a third-party complaint filed by Repsa Fabricacion, S.A. (Repsa). Our first task is to determine whether we have jurisdiction to entertain Pemex's appeal. Finding that we do, we proceed to the FSIA immunity issue. We conclude that, because the cause of action asserted by Repsa is not sufficiently connected to Pemex's commercial activity in the United States to support the exercise of jurisdiction over Pemex, the district court's order must be reversed.

I. BACKGROUND

In 1981 and 1982, Laredo National Bank (Laredo) made a series of loans to two Mexican companies, Repsa and Thermorepsa, S.A. The notes were guaranteed by Bruce C. Moats and

---

[1] Pub.L. 94–583, 90 Stat. 2891, *codified at* 28 U.S.C. §§ 1330; 1332(a)(2)–(4); 1391(f); 1441(d); 1602–1611.

Roberto Contreras, officers of Repsa. Additional guaranties were given by the Export–Import Bank of the United States (Eximbank), an independent agency of the United States government which helps finance the export of American goods and services. The loans enabled Repsa to finance the purchase of specialized steel products in the United States. Repsa needed the steel to satisfy contracts with Pemex to fabricate electrostatic dehydrators and desalters for Pemex's oil refineries. Shortly after Repsa had begun working on the steel it purchased, Pemex refused to fully honor the contracts and Repsa defaulted on the loans. Not surprisingly, Pemex's actions caused severe difficulties at Repsa. The Pemex work orders represented a significant portion of Repsa's business, and Pemex's refusal to pay made it impossible for Repsa to pay its employees. The union representing the Repsa workers went on strike and the work in progress remained in the factory. In March 1988, Repsa, Pemex, the union, and the company that had issued the performance bond on the fabrication work settled the matter and entered into a formal settlement agreement.

Meanwhile, back in the United States the Eximbank paid Laredo pursuant to its guaranty and took assignments of the notes. In December 1988, the United States, on behalf of the Eximbank, brought suit against Moats and Contreras[2] in the United States District Court for the Southern District of Texas in an effort to recover the outstanding principal and interest on the notes. Two years later, Repsa was granted leave to intervene and file a third-party complaint against Pemex. This appeal concerns only the third-party action between Repsa and Pemex; the United States, Moats and Contreras entered into an agreed judgment disposing of the main action.

Repsa's complaint concerned the March 1988 settlement agreement executed in Mexico. According to Repsa, the agreement provided that Pemex would receive all the inventory and work in progress from the factory and that Repsa would be paid for the value of its materials and products as they existed at the time they were removed from the factory. Repsa alleged that Pemex had

---

[2]In an amended complaint, the United States named Bruce C. Moats, Jr., as a defendant. He was subsequently dismissed on the Government's motion.

removed the materials from the Repsa factory in May 1988, but breached the agreement by refusing to pay. Repsa sought, as damages, the value of the materials plus interest, costs and attorney's fees.

Pemex filed a motion to dismiss, arguing (1) that under the FSIA, Pemex was immune from the jurisdiction of the district court with respect to the claims asserted by Repsa; and (2) that the settlement agreement upon which the complaint was predicated contained a forum selection clause which directed the parties to a Mexican forum for the resolution of disputes. The district court held a hearing, and, on June 12, 1991, denied the motion to dismiss without opinion.

The procedural saga from this point forward relates to the problem of appellate jurisdiction. On June 21, Pemex filed (1) a motion for reconsideration and (2) a motion to certify an interlocutory appeal. In the motion for reconsideration, Pemex asserted that the judge's comments at the hearing gave the clear impression that the motion to dismiss would be granted. Consequently, Pemex was surprised by the court's order. Directing the court to the arguments advanced in the original motion to dismiss, Pemex urged the court to reconsider and grant the motion. In the motion to certify an interlocutory appeal, Pemex asserted that it could appeal on the immunity issue as a matter of right, but that, to the extent the order rejected the argument on the forum selection issue, it could not appeal unless the district court granted certification pursuant to 28 U.S.C. § 1292(b).

On July 11, Pemex filed a notice of appeal from the June 12 dismissal (erroneously stating that the dismissal order was dated July 13), pointing out that *Stena Rederi AB v. Comision de Contratos del Comite,* 923 F.2d 380 (5th Cir.1991), permitted an immediate appeal from the denial of a motion to dismiss based on FSIA immunity. On August 14, the district court, again without opinion, denied Pemex's motion for reconsideration, but certified its order for interlocutory appeal.

On August 23, Pemex filed a "Petition for Permission to Appeal From an Interlocutory Order Pursuant to 28 U.S.C. § 1292(b)" in this court. Pemex indicated that it had already filed a notice of

appeal with respect to the FSIA immunity issue, and asserted that a difference of opinion on the question whether the forum selection clause should be respected was substantial enough to warrant interlocutory appeal. A panel of this court denied leave to take an interlocutory appeal. Citing, *inter alia, Association of Co-op Members, Inc. v. Farmland Industries, Inc.,* 684 F.2d 1134 (5th Cir.1982), *cert. denied,* 460 U.S. 1038, 103 S.Ct. 1428, 75 L.Ed.2d 788 (1983), the panel stated that the district court had failed to satisfy the requirements under 28 U.S.C. § 1292(b) for certifying a question for interlocutory appeal. *United States v. Moats,* No. 91–9154 (Oct. 8, 1991).[3]

## II. APPELLATE JURISDICTION

We confront two distinct questions of appellate jurisdiction. First, we respond to Repsa's argument that we have no jurisdiction to hear this appeal from a non-final order denying a motion to dismiss based on FSIA immunity. Second, we determine whether Pemex properly filed a notice of appeal from the district court's order.

### A. *Immediate Appeal From Denial of FSIA Immunity*

Although the district court did not specify lack of immunity, as opposed to inapplicability of the forum selection clause, as the reason for denying Pemex's motion to dismiss, neither did it indicate that FSIA immunity was *not* a factor in its decision. More importantly, the effect of the order is to require Pemex to defend the lawsuit. As the purpose behind collateral order appeals from denials of FSIA immunity is to effectuate the guarantee that immune parties will not become embroiled in litigation, *see Rush–Presbyterian–St. Luke's Medical Center v. Hellenic Republic,* 877 F.2d 574, 576 n. 2 (7th Cir.), *cert. denied,* 493 U.S. 937, 110 S.Ct. 333, 107 L.Ed.2d 322 (1989), we treat the order as holding that Pemex does not have sovereign immunity.

---

[3]Under *Association of Co-op Members,* the district court must certify in writing that the order involves a controlling question of law on which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the termination of the litigation. 684 F.2d at 1137 n. 3. The district court did not include such a statement in the August 14 order.

We recently followed several circuits and held that a district court's refusal to dismiss on the grounds of FSIA immunity is immediately appealable under the collateral order doctrine. *Stena,* 923 F.2d at 385. The *Stena* decision would appear to dispose of Repsa's contention that Pemex may not appeal this order. Repsa raises arguments, however, which deserve some attention.

Repsa suggests that *Stena* permits us to hear an appeal from the denial of FSIA immunity only where the issues are purely legal. In this case, Repsa contends, there is evidence before the district court (in the form of affidavits from Repsa officials Moats and Contreras) which indicates that Pemex had sufficient contacts in the United States to enable an American court to assert jurisdiction over it. Thus, there are factual questions relevant to the issue of immunity which preclude our exercise of jurisdiction over the appeal. Moreover, Repsa says, one of the four requirements for collateral order appeals—a risk of irreparable loss if an immediate appeal is not taken, *see EEOC v. Neches Butane Products Co.,* 704 F.2d 144, 148 (5th Cir.1983)—is absent in this case.

1. *Existence of Factual Questions*

Repsa is correct that we have authority to decide only legal issues when we review an appeal from a collateral order. *See Mitchell v. Forsyth,* 472 U.S. 511, 527–28, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985) (court hearing appeal from collateral order denying qualified immunity under 42 U.S.C. § 1983 reviews only legal issues). This rule carries even more weight here because the district court resolved FSIA immunity, an issue of subject matter jurisdiction, *Stena,* 923 F.2d at 386, on the basis of the complaint. *Cf. Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981) (appellate court reviews only application of law where district court dismisses for lack of subject matter jurisdiction on the basis of the complaint alone).

Whether Pemex is immune depends on the applicability of the "commercial activity" exception of the FSIA:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

> (2) in which the action is based upon a commercial activity carried on in the United States by a foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Not only would Pemex have to satisfy one of these "jurisdictional connections" with the United States to lose its immunity, there also would have to be a connection between its commercial activity and the cause of action asserted by Repsa. *Stena,* 923 F.2d at 386–87; *Vencedora Oceanica Navigacion v. Compagnie Nationale Algerieene de Navigation,* 730 F.2d 195, 200 (5th Cir.1984) (per curiam). As is apparent from a reading of § 1605(a)(2), application of the commercial activity exception to a particular defendant (a legal question) depends on certain jurisdictional facts: principally, it must be determined what commercial activity the defendant engaged in and where it took place.

Repsa's argument fails because there is no real dispute over the facts relevant to the existence of immunity. At no point in the litigation, including on appeal, has Pemex disputed the facts Repsa has alleged in its (Repsa's) effort to establish that Pemex falls within the commercial activity exception. Pemex has never filed an answer to Repsa's third-party complaint and it never disputed the contents of any of Repsa's submissions to the district court, including the Moats and Contreras affidavits. Repsa seems to be asserting that the lack of any district court findings concerning the jurisdictional facts it alleged precludes our review. But this logic would prevent us from reviewing Fed.R.Civ.P. 12(b)(6) dismissals for failure to state a cause of action simply because no findings as to the truth of the plaintiff's facts had yet been made. Clearly, if Pemex does not dispute Repsa's allegations, but believes that it is entitled to immunity under the facts as alleged, the issue we must resolve is the purely legal application of the FSIA. There is nothing unusual in a case arriving at an appellate court in this posture; indeed, the parties frequently do not dispute the facts relevant to jurisdiction and the courts often resolve FSIA immunity by reference to the pleadings. *E.g., Rush–Presbyterian–St. Luke's,* 877 F.2d at 576; *Compania Mexicana de Aviacion, S.A. v. U.S. Dist.*

*Court,* 859 F.2d 1354, 1360 (9th Cir.1988) (per curiam).[4]

2. *Irreparable Loss*

      Repsa's second argument is more easily dispensed with.  In *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978), the Court summarized the four requirements for immediately appealable collateral orders originally articulated in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949):  "[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment."  *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2458 (footnote and citations omitted).  The fourth part of this test requires that there be a risk of important and "probably irreparabl[e]" loss if an immediate appeal is not heard, *Cohen,* 337 U.S. at 547, 69 S.Ct. at 1226, or, in the words of the court in *Neches Butane,* "some showing of *extraordinary* harm."  704 F.2d at 148 (emphasis in original);  *see also Acosta v. Tenneco Oil Co.,* 913 F.2d 205, 208 (5th Cir.1990).

      Repsa says that there was a possibility of irreparable loss in *Stena,* the first case in this circuit to allow appeals from the denial of FSIA immunity, but not here.  The difference, Repsa argues, is that in *Stena* the plaintiff attempted to garnish the credits and effects of one defendant which were in Pemex's possession, while here the plaintiff seeks only a money judgment against the foreign entity. This is a distinction without a difference.  As noted above, sovereign immunity is an immunity from the burdens of becoming involved in any part of the litigation process, from pre-trial wrangling to trial itself.  Regardless of what the plaintiff seeks from the foreign defendant, the risk of harm from having to defend the lawsuit remains constant and is an irreparable loss within the fourth part of *Cohen.*  This circuit in *Stena* has found that the purposes behind the collateral order doctrine amply support appeals

---

[4]Even if there were an unresolved factual question, that would not, as Repsa suggests, divest us of *jurisdiction* to hear the appeal.  Rather, such a question would go to the merits of the appeal, and would probably require us to remand for further findings. *See Gould, Inc. v. Pechiney Ugine Kuhlmann,* 853 F.2d 445 (6th Cir.1988) (remanding for further proceedings because of unresolved questions concerning applicability of commercial activity exception).

from the denial of FSIA immunity, and we are not inclined to question that judgment today.

B. *Notice of Appeal*

Next, we must determine whether Pemex followed the proper procedures in filing its notice of appeal. An appeal taken under the collateral order doctrine is subject to all the usual appellate rules and time periods, including Rule 4 of the Federal Rules of Appellate Procedure. *Kenyatta v. Moore,* 744 F.2d 1179, 1186–87 (5th Cir.1984), *cert. denied,* 471 U.S. 1066, 105 S.Ct. 2141, 85 L.Ed.2d 498 (1985); *see also* C. Wright, A. Miller & E. Cooper, 15A *Federal Practice and Procedure* § 3911, at 357 (2d ed. 1992). Under Rule 4(a)(4), a timely filed motion to alter or amend the judgment under Rule 59 of the Federal Rules of Civil Procedure nullifies a notice of appeal filed before the disposition of the motion.[5] Under our decision in *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.,* 784 F.2d 665 (5th Cir.) (en banc), *cert. denied,* 479 U.S. 930, 107 S.Ct. 398, 93 L.Ed.2d 351 (1986), *any* motion filed within ten days of the entry of judgment which calls into question the substantive validity of the judgment is, however styled, treated as a motion to alter or amend the judgment under Rule 59 and triggers the FRAP 4(a)(4) rule described above. 784 F.2d at 669–70. Repsa argues that Pemex's motion for reconsideration (June 21) qualifies as a Rule 59 motion under *Harcon Barge,* thus rendering the subsequently-filed notice of appeal (July 11) a nullity. Since Pemex's petition in this court for an interlocutory appeal was denied, Repsa contends, we have no appellate jurisdiction.

Pemex attempts to avoid FRAP 4(a)(4) in two ways. First, it argues that its June 21 motion for reconsideration was not the kind of motion that triggers FRAP 4(a)(4) because, *Harcon Barge* notwithstanding, only those motions mentioned in Rule 4(a)(4) nullify a subsequently-filed notice of appeal. Pemex contends that the motion it filed on June 21 was neither a Rule 59(e) nor a Rule 60

---

[5]Because the district court's order was immediately appealable, Rule 54(a) of the Federal Rules of Civil Procedure provides that it was a judgment: " "Judgment' as used in these rules includes a decree and any order from which an appeal lies." This is consistent with the view expressed in *Kenyatta* that Rule 4 of the Federal Rules of Appellate Procedure applies to collateral order appeals.

motion (the kinds of motions we held in *Harcon Barge* would trigger FRAP 4(a)(4) ), but instead was a motion "filed in an effort to invoke the trial court's plenary power over interlocutory orders." We disagree. The motion is styled "Motion for Reconsideration" and asserts that Pemex had expected the district court to dismiss it from the case. The motion indicates that Pemex was surprised by the court's decision to dismiss, and asks the court to once again consider the arguments in favor of dismissal made in the original motion to dismiss. It "call[ed] into question the correctness of a judgment," *Harcon Barge,* 784 F.2d at 669 (quoting *Dove v. Codesco,* 569 F.2d 807, 809 (4th Cir.1978) ), and therefore was a Rule 59(e) motion. Because the district judge did not dispose of the motion until August, the July 11 notice of appeal had no effect.

Pemex's second argument is more successful. Pemex contends that the Petition for Permission to Appeal from an Interlocutory Order it filed on August 23 (nine days *after* the district court decided the motion for reconsideration) resurrects its appeal. We agree. The nullification of a notice of appeal under Rule 4(a)(4) does not prevent an appellant from filing a new notice of appeal after the motion referred to in Rule 4(a)(4) is decided. *Smith v. Barry,* ––– U.S. –––, 112 S.Ct. 678, 682, 116 L.Ed.2d 678 (1992).[6] Although the August 23 filing was not styled "Notice of Appeal," a petition for an interlocutory appeal may function as a notice of appeal. *Browning v. Navarro,* 887 F.2d 553, 558 (5th Cir.1989); *Cobb v. Lewis,* 488 F.2d 41, 46 (5th Cir.1974). And, although the document deals with the forum selection clause issue (Pemex thought it had already perfected an appeal on the FSIA immunity issue), it contains all the requisites under Rule 3(c) for a valid notice of appeal. It specifies the party taking the appeal, references the order appealed from,[7] and indicates (in the caption) the court to which the appeal is taken. Its text is well within the requirements of Rule

---

[6]In *Smith,* the Court considered a *pro se* brief filed in the court of appeals sufficient to resurrect an appeal that had been nullified pursuant to FRAP 4(a)(4) by the appellant's filing of a notice of appeal prior to the district court's ruling on a post-trial JNOV motion. 112 S.Ct. at 682.

[7]As noted above, the district court's order did not specify reasons for denying Pemex' motion, so the order appealed from functions as a rejection of Pemex's assertion that it was entitled to immunity from the jurisdiction of courts in the United States.

3, which we construe liberally, *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 316, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988), and it gave the notice to the court and the parties required for a document's sufficiency as a notice of appeal. *See Smith,* 112 S.Ct. at 682. Moreover, the fact that the petition was filed in the court of appeals, rather than the district court as required by Rule 3(a), is not fatal. Under Rule 4(a)(1), a notice of appeal mistakenly filed in the court of appeals may be transmitted to the district court and "shall be deemed filed in the district court on the date it was received in the court of appeals." Pemex's appeal is properly before us. At last, we proceed to the merits.

### III. SOVEREIGN IMMUNITY

We recently provided an overview of the history and structure of the FSIA in *Stena,* 923 F.2d at 384–85, 386–87. In brief, the Act provides that American courts have no subject matter jurisdiction over suits against foreign states and their instrumentalities[8] unless certain enumerated exceptions apply. 28 U.S.C. § 1604; *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 485 n. 5, 103 S.Ct. 1962, 1967 n. 5, 76 L.Ed.2d 81 (1983).[9] We review the existence of jurisdiction under the FSIA de novo. *Stena,* 923 F.2d at 386. As the party claiming immunity, Pemex had the burden of persuasion throughout. Once it made a prima facie showing of immunity, the burden shifted to Repsa to show that one of the exceptions to immunity existed. Pemex then was required to show that the exception did not apply. *See generally Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285, 289 n. 6 (5th Cir.1989) (per curiam).

---

[8]Agencies or instrumentalities of foreign states are included within the definition of "foreign state," and agencies are further defined to include corporations which are organs of foreign states or whose shares or other ownership interest is owned by a foreign state. 28 U.S.C. § 1603(a), (b). It is undisputed that Pemex, the nationalized petroleum company of Mexico, falls within the definition of foreign state for purposes of sovereign immunity. *See Stena,* 923 F.2d at 382, 386 & n. 7.

[9]The court may exercise personal jurisdiction so long as there is subject matter jurisdiction and service of process, and the requirements of due process have been met. *Stena,* 923 F.2d at 386 n. 8.

The relevant exception here is the "commercial activity" exception of 28 U.S.C. § 1605(a)(2), reprinted above. An activity is considered "commercial" if it is the type a private person normally would engage in for profit. *Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1108 n. 6 (5th Cir.1985). There is no doubt that Pemex engaged in commercial activity, as opposed to the public acts of a sovereign, at all relevant times. The negotiation of contracts, including entry into a settlement agreement, clearly is the type of act performed by private persons. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria,* 647 F.2d 300, 310 (2d Cir.1981), *cert. denied,* 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). There is nothing in the contracts or the agreement that would indicate the acts of a state, nor has Pemex suggested that these activities were really governmental activities. *See Rush–Presbyterian–St. Luke's,* 877 F.2d at 578–79 (describing contractual arrangements that may be considered public, rather than private, acts).

Section 1605(a)(2) requires that a sovereign's commercial activity have at least one of three "jurisdictional connections" to the United States:

> (1) a commercial activity carried on in the United States;
>
> (2) an act performed in the United States in connection with a commercial activity carried on outside the United States; [or]
>
> (3) a commercial activity carried on outside the United States that has a direct effect in the United States.

*Stena,* 923 F.2d at 386 (citations omitted). In addition to the jurisdictional connection, it is well-established that "there must be a connection between the plaintiff's cause of action and the commercial acts of the foreign sovereign." *Id.* (citations omitted). As we explained in *Arango v. Guzman Travel Advisors Corp.,* 621 F.2d 1371 (5th Cir.1980), the applicability of the commercial activities exception depends on "whether the particular conduct giving rise to the claim in question actually constitutes or is in connection with commercial activity, regardless of the defendant's generally commercial or governmental character." *Id.* at 1379. Thus, the fact that Pemex routinely carries on some portion of its oil exploration and production activities in the United States is not

enough to support jurisdiction. *Stena,* 923 F.2d at 387. Rather, *this lawsuit* must be based on commercial activities that are connected to the United States in the manner described by the statute. Repsa relies mainly on the first and third exceptions.

A. *Commercial Activity in the United States*

In support of jurisdiction under this exception, Repsa points to a series of activities Pemex performed in the United States in connection with the original Repsa–Pemex steel contracts:  the contracts required that Repsa purchase American-made steel and internals, Pemex representatives traveled to Pennsylvania to inspect and approve the steel prior to shipment, the transaction was financed by an American bank and guaranteed by the Eximbank, Pemex became the beneficiary of Repsa's contracts with American suppliers, Pemex inspectors traveled to Texas to oversee the storage of steel until it could be moved to Mexico, Pemex retained control over the design and manufacturing of the internals, Pemex approved Laredo's funding of the steel purchases, and Pemex ultimately purchased internals from Texas after unilaterally cancelling the contracts with Repsa.

The difficulty with Repsa's argument is that its lawsuit is based on an alleged breach of the settlement agreement, not on the original Repsa–Pemex contracts for the fabrication of steel and other materials. All of the activities it cites occurred in connection with the original contracts, and none had anything to do with the settlement agreement or its breach. The agreement was negotiated and signed in Mexico between Mexican entities, and was allegedly breached by the failure of one Mexican company to pay another. Certainly, the agreement is related to the original contracts, for it represented the parties' resolution of a dispute over those contracts. But the agreement functioned as a new contract between the parties, and Repsa now wants to recover for an alleged breach of that new contract. Repsa has not alleged or shown that Pemex performed any acts in the United States in connection with the settlement agreement. Instead, Repsa's complaint is that Pemex took materials from the Repsa factory in Mexico and failed to pay for them. All of the acts on which this lawsuit is based occurred in Mexico. Repsa, therefore, cannot show the required material connection

between its cause of action and Pemex's commercial activities in the United States. *Stena,* 923 F.2d at 387. Pemex's activities must be classed as too isolated or unrelated to support jurisdiction under this exception. *See id.*[10]

B. *Commercial Activity Outside the U.S. That Has a Direct Effect in the U.S.*

Repsa argues that the third exception applies because Pemex's failure to pay Repsa under the original contracts (an act that occurred outside the United States) caused losses to an American bank and the Eximbank, an agency of the United States Government. This, Repsa says, was a direct effect in the United States.

Once again, however, Repsa cannot demonstrate any material connection between its cause of action and Pemex's commercial acts. We have held that the third exception may be satisfied when a foreign sovereign's commercial activities have a "substantial" and "direct and foreseeable" effect in the United States. *Zernicek v. Brown & Root, Inc.,* 826 F.2d 415, 417–18 (5th Cir.1987), *cert. denied,* 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988); *see also Stena,* 923 F.2d at 390. But even if the losses to Laredo and the Eximbank qualify as a direct effect under *Zernicek,* they were caused by commercial activities performed in connection with the original Repsa–Pemex contracts. These activities, and the consequent losses, occurred before the parties negotiated the settlement agreement upon which Repsa is suing. Repsa can point to no activities related to the settlement agreement which caused any effects, direct or otherwise, in the United States. Once again, the cause of action asserted in this case does not have a material connection to any of Pemex's acts outside the United States that caused a direct effect in the United States. Thus, this exception does not apply.

---

[10]In a section of its brief addressing the second exception, Repsa merely asserts that Pemex engaged in "commercial activity" within the meaning of the FSIA. Even if Repsa had actively advanced this exception, we would find that it does not apply. We explained in *Stena* that a connection between commercial activity outside the United States is irrelevant to the second exception; rather, there must be a material connection "between the plaintiff's cause of action and the *act performed in the United States.*" 923 F.2d at 388 (citing *Gilson v. Republic of Ireland,* 682 F.2d 1022, 1027 & n. 22 (D.C.Cir.1982)) (emphasis in original). As we have just pointed out, there is no material connection between Repsa's cause of action and the acts Pemex performed in the United States.

## IV. CONCLUSION

Pemex's appeal is properly before us. We conclude that Pemex is immune from the jurisdiction of the courts of the United States in this action. Accordingly, the judgment of the district court is reversed and the cause remanded with instructions to dismiss the third-party action against Pemex.

REVERSED AND REMANDED.