Marshall COLEMAN, et al.

v.

ALCOLAC, INC., et al.

Civ. A. No. G–94–415.

United States District Court,
S.D. Texas,
Galveston Division.

June 6, 1995.

Francis I. Spagnoletti, Spagnoletti & Assoc., Houston, TX, John Arthur Eaves, Jackson, MS, for plaintiffs Marshall Coleman, Michael Briceland, Georgina Brown, Patrecia Browning, Davy Chapman, Nan Corple, Jerry Dearman, Lavon Dempsey, Donald L. Drake, Lu Ann Faris, William Kirkland, J.W. Kuffel, Melinda Leduc, Stanley Livingston, David McGee, David Millward, Carole Ann Millward, Vernon Newman, John Short, James Silvester, Kippy Smith, James E. Taylor, Howard Turner, James McCourt, Victor Silvester, Michael Bates, Dean Lundholm, Jr.

Francis I. Spagnoletti, Spagnoletti & Assoc., Houston, TX, for plaintiffs Frederick Earl Fowler, Thomas L. Bradley, et al.

Gary Benjamin Pitts, Pitts & Collard, Houston, TX, for intervenor-plaintiff Herman Piceynski.

Gary Benjamin Pitts, Pitts & Collard, Houston, TX, Richard Lee Melancon, Schechter & Associates, Galveston, TX, for intervenor-plaintiff Ihsaan Abdul–Malik, et al.

Richard Lee Melancon, Schechter & Associates, Galveston, TX, for intervenor-plaintiff Kevin R. Allen.

Michael John Maloney, Fisher Gallagher & Lewis, Houston, TX, for intervenor-plaintiff Gary Zuspann.

F. Walter Conrad, Baker & Botts, Houston, TX, for defendants ABB Lummus Crest Inc., ABB Lummus Crest North America, Inc.

H. Ronald Welsh, Thad T. Dameris, Vinson & Elkins, Houston, TX, for defendants Rohne–Poulenc Inc., Alcolac, Inc., Alcolac Intern. Inc., Interchem, Inc.

J. Clifford Gunter, III, Bracewell & Patterson, Anthony Cole Duenner, Bracewell & Patterson, Houston, TX, for defendants Bechtel Group, Inc., Bechtel Corp.

Theodore F. Weiss, Jr., Houston, TX, Samuel M. Sipe, Jr., Steptoe & Johnson, Washington, DC, for defendant American Type Culture Collection, Inc.

G.P. Hardy, III, Hardy & Johns, Houston, TX, James Richard Watkins, Jr., Stephen Mark Strawn, Royston Rayzor Vickery & Williams, Galveston, TX, William R. Towns, Royston Rayzor Vickery & Williams, Hous-

ton, TX, Scott S. Partridge, George A. Frilot, III, George Frazier, James F. Shuey, Michael R. Phillips, Lemle & Kelleher, New Orleans, LA, for defendant Fisher Controls Intern., Inc.

Charles A. Watson, Dampier & Watson, Houston, TX, James Hugh Westmoreland, Houston, TX, for defendant Delta Steel Inc.

Murray J. Fogler, McDade & Fogler, Houston, TX, for defendant Translogic Corp. and movants Thyssen Inc. and U.S. Elevator Corp.

Richard Lee Melancon, Schechter & Associates, Galveston, TX, for movants Kevin R. Allen, Tamba G. Allen, Andrew A. Alston.

Gary Benjamin Pitts, Pitts & Collard, Houston, TX, Richard Lee Melancon, Schechter & Associates, Galveston, TX, for movants Ihsaan Abdul–Malik, Aatifa Abdul–Malik.

Michael John Maloney, Fisher Gallagher & Lewis, Houston, TX, James E. Wren, Robert L. McHaney, Jr., Waco, TX, for movant Gary Zuspann.

John Alexander Irvine, Thelen Marrin Johnson & Bridges, Houston, TX, for movants Budd Co., Thyssen Holding Corp., David Williams, Thomas Stuart.

Daniel David Hu, U.S. Attys. Office, Houston, TX, Robin D. Smith, Dept. of Justice, Washington, DC, for third-party defendant U.S.

Gary Benjamin Pitts, Pitts & Collard, Houston, TX, for movant Herman Piceynski.

Carlos Garza, Martin Micks Garza & Bunce, Galveston, TX, Joseph A. Katarincic, Katarincic & Salmon, Pittsburg, PA, for defendants Inc. Dresser Industries, M.W. Kellogg Co., M.W. Kellogg Holdings, Inc., Kellogg Iraq Ltd.

Peter E. Strand, Shoock, Hardy & Bacon, Kansas City, MO, Stephen Robert Lewis, Jr., Galveston, TX, for defendants Montedison Spa, Alfa Laval Inc., Tetra Laval Group, Alfa Laval AB, Chemap.

Louis B. Paine, Jr., Butler & Binion, Houston, TX, for defendant Beta First, Inc.

Carlos Garza, Martin Micks Garza & Bunce, Galveston, TX, for defendant Allied-signal Inc.

Mitchell A. Toups, Weller Green McGown & Toups, Beaumont, TX, for defendant Sigma Chemie GmBH.

Charles A. Watson, Dampier & Watson, Houston, TX, for defendant Delta Steel Inc.

Stephen W. Lemmon, Bradley Wayne Cole, Sheinfeld Maley & Kay, Houston, TX, for defendant Cron Chemical Inc.

Stephen D. Susman, Susman & Godfrey, Houston, TX, for defendants Degussa Corp., Degussa AG.

## ORDER ON MOTIONS TO DISMISS

KENT, District Judge.

This is a class action of veterans of the Persian Gulf War who have brought suit under theories of negligence, strict liability, and product liability against Defendants Alcolac, Inc., a Georgia corporation ("Alcolac"), Alcolac International, Inc., a Maryland corporation ("Alcolac International"), Interchem, Inc., a New York corporation ("Interchem"), Rhone–Poulenc, Inc., a New York corporation ("Rhone–Poulenc"), Bechtel Group, Inc., a Delaware corporation ("Bechtel"), Bechtel Corporation, a Nevada corporation ("Bechtel Corp."), American Type Culture Collection, Inc., a District of Columbia corporation ("ATCC"), Dresser Industries, Inc., a Delaware corporation ("Dresser"), M.W. Kellogg Co. ("Kellogg"), M.W. Kellogg Holdings, Inc. ("Kellogg Holdings"), Kellogg Iraq, Ltd. ("Kellogg Iraq"), all Delaware corporations, Beta First, Inc., a Texas corporation ("Beta First"), China North Industries Corp., a business enterprise of the Republic of China ("China North"), AlliedSignal, Inc., a Delaware corporation ("AlliedSignal"), Sigma–Aldrich Corp., a foreign corporation ("Sigma–Aldrich"), Sigma Chemie GmBH ("Sigma Chemie"), Preussag Handel GmBH ("Preussag Handel"), Preuss AG, ("Preuss"), Herberger–Bau GmBH ("Herberger–Bau"), Degussa AG ("Degussa"), Thyssen AG ("Thyssen"), all German companies, Alfa Laval Inc., a New Jersey corporation, Alfa Laval AB, a Swedish company, Tetra Laval Group, also a Swedish company, Cheamp, a Swiss compa-

ny, Delta Steel, Inc., a Texas corporation ("Delta Steel"), and Degussa Corp., an Alabama corporation ("Degussa").

Plaintiffs consist of a potential class of up to 50,000–100,000 persons who served in Operation Desert Storm and who claim to have been injured by exposure to chemical and biological weapons ("CBWs") used during the Gulf War. Plaintiffs bring this suit against Defendants under allegations that Defendants were negligent in constructing, manufacturing, selling and/or installing the chemical components, or the equipment used to manufacture such chemicals, which were allegedly later incorporated into the CBWs Plaintiffs claim have caused their various illnesses following the Persian Gulf War.

This case was originally filed in the 23rd Judicial District Court of Brazoria County, Texas and was later removed to this Court. After extensive pleadings on this matter, the Court allowed the parties to conduct limited discovery on jurisdictional issues involved in the case. As a result, the Court has before it now a variety of Motions to Dismiss that Defendants have filed based on this limited discovery. The Court has read the Motions and their Responses with great care, and after careful consideration of all the pleadings in this case, it is clear to the Court that it is completely lacking in subject matter jurisdiction over this case. As a result, the Court *sua sponte* decides that the above-captioned cause of action is hereby **RE-MANDED** to the 23rd Judicial District Court of Brazoria County, Texas, where it was originally filed, pursuant to the mandate of 28 U.S.C. § 1447(c).

## I. Subject Matter Jurisdiction

■ 29 U.S.C. § 1447(c) provides in relevant part that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall* be remanded" (emphasis added). It is well established that federal courts have a continuing duty to investigate whether jurisdiction is proper in a case, even if the parties

themselves do not raise the issue. *FDIC v. Loyd*, 955 F.2d 316, 322 (5th Cir.1992); *Scherer v. Laborers' Intern. Union of North America*, 746 F.Supp. 73 (N.D.Fla.1988). Although a court may not *sua sponte* remand a case for procedural defects in removal after a lapse of the thirty-day limitations period imposed by § 1447(c), *In re Shell Oil Co.*, 932 F.2d 1518, 1519 (5th Cir.1991), *cert. denied sub nom. Castillo v. Shell Oil Co.*, 502 U.S. 1049, 112 S.Ct. 914, 116 L.Ed.2d 814 (1992), 28 U.S.C. § 1447(c) makes clear that the court *must* remand a case when it determines that it lacks subject matter jurisdiction. Such a *sua sponte* remand for lack of subject matter jurisdiction is unreviewable on appeal. 28 U.S.C. § 1447(d);[1] *Loyd*, 955 F.2d at 320 n. 4 ("Under new § 1447(c), remand orders based on lack of subject matter jurisdiction are clearly unreviewable."); *Lemos v. Fencl*, 828 F.2d 616 (9th Cir.1987).

■ It is an elementary and long-standing principle that federal courts are courts of limited jurisdiction that have "only the authority endowed by the Constitution and that conferred by Congress." *Save the Bay, Inc. v. United States Army*, 639 F.2d 1100, 1102 (5th Cir.1981). Under federal statute, federal courts have original jurisdiction over all civil actions where the matter in controversy exceeds $50,000 and is between citizens of different states. 28 U.S.C. § 1332. This diversity statute requires complete diversity, in which none of the Plaintiffs may share the same state citizenship as one of the Defendants. *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *see also Whalen v. Carter*, 954 F.2d 1087, 1094 (5th Cir.1992); *Mas v. Perry*, 489 F.2d 1396, 1398–99 (5th Cir.1974), *cert. denied*, 419 U.S. 842, 95 S.Ct. 74, 42 L.Ed.2d 70 (1975). In this case, it is undisputed that diversity jurisdiction is absent, because several Plaintiffs and Defendants share the same state of citizenship.

■ In addition to diversity jurisdiction, Article III of the Constitution grants federal

---

1. 28 U.S.C. § 1447(d) reads:

 An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except than an order remanding a case to the State court from which it was removed pursuant to section 1443 of this title shall be reviewable by appeal or otherwise.

courts jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority." This Constitutional mandate is supplemented by 28 U.S.C. § 1331's requirement that suit be one "arising under" the Constitution or laws of the United States, and for this purpose "[a] suit arises under the law that creates the cause of action." *See Lowe v. Ingalls Shipbuilding,* 723 F.2d 1173, 1179 (5th Cir.1984). This federal question jurisdiction must appear on the face of the Complaint and must involve a claim directly founded on federal law. *Epps v. Bexar–Medina–Atascosa Counties Water Improvement District No. 1,* 665 F.2d 594, 595 (5th Cir.1982).

In this case, it is clear that Plaintiffs' Complaint is entirely composed of state-law claims and contains no claim arising under the Constitution, treaty, or statute of the United States. However, Defendants removed the case to this Court under the dual theory that Plaintiffs' Complaint is completely preempted by federal law and, in the alternative, that Plaintiffs' Complaint is "artfully drawn" to avoid federal claims and manipulate jurisdiction. (See Instrument # 1). Despite this allegation by the initial Defendants, only some of whom remain in this case, the Court has carefully examined the entire record of this case—a Herculean task it does not eagerly anticipate ever repeating—without finding even the slightest glimmer of a genuine federal question.

The Court's task in this regard has been complicated by a number of peculiar arguments made by several Defendants, many of whom seem to be speaking at cross-purposes rather than as a unified group opposing Plaintiffs' Complaint. For example, the Court has encountered Defendant AlliedSignal's novel theory that, even if the Court does not find this case to be nonjusticiable because of the political question doctrine, it should nevertheless dismiss the case entirely because Plaintiffs' Complaint fails, in part, to comply with Fed.R.Civ.P. 8(a)(1)'s requirement that a Complaint include "a short and plain statement of the grounds upon which

the [federal] court's jurisdiction depends...."

However, given that Plaintiffs filed their Complaint in state court and have continually claimed that only state law controls their case, the Court is at an utter loss to understand why Plaintiffs should have complied with Fed.R.Civ.P. 8(a)(1) when filing in the 23rd District Court of Brazoria County.

■ AlliedSignal seems to assume that the nature of federal question jurisdiction is controlled by Plaintiffs' Seventh Amended Complaint, which was filed well after this case was removed, but it is elementary that, in determining whether a cause of action arises under federal law in the context of removal, the Court must look to Plaintiffs' Complaint as it existed at the time the Petition for Removal was filed to decide whether Plaintiffs' position has any legal substance. *Cromwell v. Equicor–Equitable HCA Corp.,* 944 F.2d 1272 (6th Cir.1991), *cert. denied,* ─── U.S. ───, 113 S.Ct. 2, 120 L.Ed.2d 931 (1992). Thus, if the removing Defendants are correct in stating that Plaintiffs' Complaint is either completely preempted by federal law or artfully pled to manipulate jurisdiction, then the fact that Plaintiffs' Complaint fails to comply with Fed.R.Civ.P. 8(a)(1), or even overtly denies that a federal claim is made, is entirely immaterial to this Court's jurisdiction.

The Court turns, then, to the question of preemption as it has been raised in these Motions to Dismiss by Alcolac and Rhone–Poulenc ("the Alcolac Defendants"). The Court notes that both of these Defendants were among the removing Defendants, and, as such, they joined with the argument that Plaintiffs' Complaint is either completely preempted or artfully drawn. Nevertheless, in its current Motion to Dismiss, the Alcolac Defendants do *not* make this argument. Instead, they make the far more limited contention that Plaintiffs' causes of action are preempted by the Federal Export Administration Act, 50 App.U.S.C. § 2401 *et seq.* Defendants allege that the chemicals in question in this case are extensively regulated by the Commerce Department under this Act and that this Court's determination that Defendants are in any way liable to the Plain-

tiffs would "necessarily and impermissibly conflict with the Executive's sovereign power over foreign relations and national security." Thus, the Alcolac Defendants now appear to argue, not that this Court has subject matter jurisdiction under a preemption theory, but that the "preemption" found in this case makes it somehow nonjusticiable.

In response, the Plaintiffs make the peculiar arguments that the Export Administration Act expired on August 20, 1994—a contention that is clearly immaterial, given that the Act was in effect at the time the alleged events occurred—and that the statute contains no preemption standards. The Court not only firmly disagrees with the arguments of both Plaintiffs and Defendants; it finds the contentions of both sides in this dispute to be astonishing in their failure to comprehend the true significance of the law of preemption here.[2] The Alcolac Defendants obviously wish to adjudicate this case in federal court, as evidenced by their joinder in the Petition for Removal and its arguments concerning complete preemption. Yet the "preemption" arguments presented to this Court in Defendants' Motion to Dismiss implicitly cut against this contention by their very silence on the question of complete preemption, which is the *sole* basis by which this Court could find a genuine federal question in this case.

As an initial matter, even if the Court were to agree with every aspect of the Defendants' argument, the fact that the Export Administration Act might preempt state law has no relevance whatsoever to the Court's jurisdiction over this case. It is undisputed that Plaintiffs have consistently framed their Complaints solely in terms of state law and have in no way raised any issue of federal statute, Constitutional law, or the treaties of the United States. As such, it is equally obvious that this Court must apply the well-pleaded complaint rule and its exceptions to determine whether or not Plaintiffs have

stated a valid cause of action or whether federal law preempts state causes of action.

■■■ It is elementary that a Defendant may remove a state-court action to federal court only if the action could have been originally filed in federal court. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 391–92, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). In a case like the present one, in which no diversity jurisdiction exists, a federal question must be present for removal to be proper. *Rheams v. Bankston, Wright & Greenhill,* 756 F.Supp. 1004, 1008 (W.D.Tex.1991). Whether or not such federal question jurisdiction is present depends on the well-pleaded complaint rule, which holds that the Plaintiff is master of his or her Complaint and that the Complaint determines the Court's jurisdiction. *Caterpillar,* 482 U.S. at 392, 107 S.Ct. at 2429; *Cedillo v. Valcar Enterprises,* 773 F.Supp. 932, 934 (N.D.Tex.1991). If the Complaint does not present a federal question on its face, there is no federal question jurisdiction. *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 10, 103 S.Ct. 2841, 2846, 77 L.Ed.2d 420 (1983). Most critically for the purpose of this case, the fact that a federal defense may be raised to the Plaintiff's Complaint will *not* create federal question jurisdiction. *Franchise Tax Board,* 463 U.S. at 12, 103 S.Ct. at 2847; *Powers v. South Central United Food & Commercial Workers Unions,* 719 F.2d 760, 764 (5th Cir. 1983).

■■■ However, there are two exceptions to this general rule, neither of which are argued by the parties in the Motions currently before the Court. First, courts may determine under the artful pleading doctrine that a Plaintiff's state-law claims are, in fact, federal in nature, regardless of how the Plaintiff has characterized them. *In re Carter,* 618 F.2d 1093, 1101 (5th Cir.), *cert. denied,* 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1980); 14A Wright, Miller &

---

**2.** Indeed, it is not clear from Defendants' brief exactly what remedy they seek by claiming that Plaintiffs' Complaint is preempted. Defendants raise this issue in a general Motion to Dismiss, yet they do not (nor would the Court expect them to raise such a novel idea) explicitly claim that this Court has no jurisdiction over the case on

this basis. The Court assumes that Defendants intend to move to dismiss Plaintiffs' state-law Complaint in an effort to force them to replead the matter under what is alleged to be the applicable federal law. For the reasons stated below, however, the Court does not find that preemption demands such a remedy in this case.

Cooper, Federal Practice and Procedure § 3722 at 266–67. If the court determines that the Plaintiff's claim is, in fact, governed by federal law, the court will further determine whether Plaintiff "artfully" avoided the federal claim for some improper motive. If the court concludes that the Plaintiff's failure to plead a federal action was not in good faith, but an attempt to manipulate jurisdiction or mask federal preemption, the federal court will not remand the case. *Federated Department Stores v. Moitie,* 452 U.S. 394, 397 n. 2, 101 S.Ct. 2424, 2427 n. 2, 69 L.Ed.2d 103 (1981); *Yawn v. Southern Railway,* 591 F.2d 312, 316 (5th Cir.1979), *cert. denied,* 442 U.S. 934, 99 S.Ct. 2869, 61 L.Ed.2d 304 (1979). If, however, the court determines that the Plaintiff could legitimately choose between the state and federal causes of action, the artful pleading doctrine does not apply. For the reasons stated below, the Court finds that this doctrine is inapplicable to this case.

■■■■ A second exception to the well-pleaded complaint rule—one which Defendants *appear* to raise in a remarkably cumbersome manner—is the doctrine of preemption: if the Plaintiff's Complaint is *completely* preempted by federal law, it will be deemed to be a federal cause of action even though it raises only state-law issues on its face. *Metropolitan Life Insurance Co. v. Taylor,* 481 U.S. 58, 64, 107 S.Ct. 1542, 1547, 95 L.Ed.2d 55 (1987); *Franchise Tax Board,* 463 U.S. at 23–24, 103 S.Ct. at 2854; *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 675, 94 S.Ct. 772, 781, 39 L.Ed.2d 73 (1974). "In these situations the federal removal court will look beyond the letter of the complaint to the substance. of the claim in order to assert jurisdiction." 14A Wright, Miller & Cooper § 3722 at 243.

■■■■ However, for complete preemption to exist, the federal law must so completely preempt the field that any suit that sounds in that area is necessarily a federal action. This doctrine, first announced in *Avco Corp.*

v. *Aero Lodge No. 735,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968), has been codified in a three-part test by the Fifth Circuit in *Aaron v. National Union Fire Insurance Co.,* 876 F.2d 1157, 1164–65 (5th Cir.1989), *cert. denied,* 493 U.S. 1074, 110 S.Ct. 1121, 107 L.Ed.2d 1028 (1990). Under *Aaron,* complete preemption requires a showing of three factors:

(1) the federal statute must provide a civil enforcement provision that creates a federal cause of action that both replaces and protects the same interests as the preempted state law cause of action;

(2) the federal statute must provide a specific jurisdictional grant to the federal courts to enforce the cause of action created by that federal statute; and

(3) there must exist clear Congressional intent to make the preempted state claims removable to federal court.

*Id.* at 1161–64.

■■■■ In this case, Defendants have made no attempt to argue that the Export Administration Act completely preempts the common law tort actions brought by Plaintiffs, nor could they do so. This is a suit between private parties. As such, for there to be any possibility that Plaintiffs' causes of action are completely preempted by federal law, Plaintiffs must first be able to bring suit under the Export Administration Act, a fact that is manifestly impossible under that statute. The Export Administration Act creates criminal and civil sanctions, as well as administrative sanctions. It does not, however, give rise to a private right of action to enforce its substantive provisions. In addition to its lack of an explicit private cause of action, it has also been held that the Export Administration Act does not create an *implied* private right either. *Bulk Oil (Zug) A.G. v. Sun Co., Inc.,* 583 F.Supp. 1134 (1983), *aff'd by,* 742 F.2d 1431, *cert. denied,* 469 U.S. 835, 105 S.Ct. 129, 83 L.Ed.2d 70 (1984).[3]

---

3. As the *Bulk* court set forth, there is a four-factor test to determine whether an implied remedy is to be found in a statute that does not create an explicit one:

First, is the plaintiff "one of the class for whose *especial* benefit the statute was enacted," ... that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, ex-

■ The fact that no private cause of action exists under the Export Administration Act also renders any allegation that this Court has original jurisdiction under 28 U.S.C. § 1337(a) untenable on its face. That statute states, in part, that:

"The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade against restraints and monopolies...."

However, the mere fact that a federal statute regulating commerce may be tangentially related to a cause of action is insufficient to confer federal district courts with original jurisdiction under § 1337(a). *Zimmerman v. Conrail*, 550 F.Supp. 84 (S.D.N.Y.1982). Instead, the Court must undertake an inquiry into the "arising under" language of § 1337(a) and use the same relevant factors that are employed in determining whether a private federal cause of action exists under the law in question. *Zeffiro v. First Pennsylvania Banking and Trust Co.*, 623 F.2d 290 (3rd Cir.1980), *cert. denied*, 456 U.S. 1005, 102 S.Ct. 2295, 73 L.Ed.2d 1299 (1982). Thus, given that the Export Administration Act provides no private cause of action but only a defense to Plaintiffs' claims, it is clear that Plaintiffs' causes of action could not "arise under" it and that the Court does not have original jurisdiction under 28 U.S.C. § 1337(a).

As stated above, it is difficult to grasp what, precisely, the Defendants intend to ask of this Court by arguing that Plaintiffs' causes of action are preempted by federal law. Insofar as Defendants seek to claim that Plaintiffs must bring their action under the Export Administration Act, that is clearly impermissible for the reasons stated above. If Defendants intend to claim that this Court has subject matter jurisdiction

over Plaintiffs' state-law claims because of an alleged preemption, or that Plaintiffs' state-law pleadings are "artfully" drawn to avoid the Export Administration Act, such claims are also impermissible in the context of this case.

However, the Defendants' pleadings *seem* to suggest that this Court should *abstain* from this cause of action altogether on the basis of the preemption claim. Indeed, Defendants frame their argument in terms remarkably similar to the political question doctrine discussed below.

■ It is obvious, however, that any such claim—if one is even made here—is improper. Defendants essentially argue that the extensive federal regulation controlling the export of chemicals preempts the field of export regulations and that "Plaintiffs' theory of liability directly collides with the foreign policymaking authority of the Commerce Department" to such an extent that no jury should be allowed to "second-guess the Commerce Department on foreign relations or national security matters." As an implicit abstention argument, the Court can only describe this novel theory as a "reverse-*Burford*" abstention that asks this Court to find the case nonjusticiable because it would otherwise interfere with a federal regulatory scheme, as opposed to an interference with state regulations as in ordinary *Burford* abstention. *See Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).[4]

■ Any such abstention would be manifestly improper. First, no "reverse-*Burford*" abstention doctrine exists, nor could this Court imagine the logic for such a contorted theory to be invented. Secondly, even the ordinary abstention doctrines are them-

---

plicit or implicit, either to create such a remedy or to deny one? ... Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for plaintiff? ... And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Bulk Oil*, 583 F.Supp. at 1139 (quoting *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975)). The Court finds that under

existing case law, as well as the plain language of *Cort*, it is obvious that no implied cause of action arises under the Export Administration Act.

4. The Court seizes on *Burford* in this context because in *Burford* abstention, dismissal (which Defendants seem to seek here), rather than retention of jurisdiction pending a state determination, is the usual action taken by a federal court. 17A Wright, Miller & Cooper § 4245.

selves usually inappropriate when a case concerns preemption. *Pullman* abstention is inappropriate because preemption is not a constitutional issue. *Hotel Employees and Restaurant Employees International Union v. Nevada Gaming Commission,* 984 F.2d 1507, 1512 (9th Cir.1993). *Burford* abstention is not appropriate because a decision to abstain to avoid interfering with a state regulatory scheme would be an implicit ruling on the merits. *Id.; Knudsen Corp. v. Nevada State Dairy Comm'n,* 676 F.2d 374, 377 (9th Cir.1982).[5]

Thus, the Court finds that Defendants' argument that Plaintiffs' pleadings are preempted by federal law has no direct relevance to this case at this juncture. The Export Administration Act does not completely preempt Plaintiffs' claims and thus does not confer federal question jurisdiction to this Court or provide a basis for the dismissal of Plaintiffs' current pleadings due to a claim that Plaintiffs must allege violations of the Export Administration Act. Nor does the presence of that federal statute give rise to any reason for abstention from this case. Instead, Defendants' invocation of the Export Administration Act is merely a defense to be used when and if this case is heard on its merits.

Finally, having found that no federal question jurisdiction exists in this case, the Court turns to the issue of whether it has original jurisdiction over the above-captioned cause of action under an exception to the Foreign Sovereign Immunities Act ("FSIA"). Beta First boldly asserts that it is among the companies that have "no business in this lawsuit." Beta First is a Texas corporation headquartered in California and wholly-owned by China North. Beta First avers that it had no business dealings with the Republic of Iraq nor any involving chemical or biological weapons and that its sole business is the importation of products into the United States for civilian use. Beta First, as indicated on pages 58–59 of the Seventh Amended Complaint, has been sued on the

theory that it is an alter ego of its parent corporation, China North.

China North, which has not appeared in this lawsuit, is a Chinese corporation wholly owned by the People's Republic of China. Beta First, on China North's behalf, states that China North, as an instrumentality of the Chinese government, is entitled to protection under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.,* and, as a result, this Court lacks jurisdiction over it and the claims against it.

 In 1976, Congress passed the FSIA, thus substantially codifying the "restrictive theory" of foreign sovereign immunity. Under this theory, a foreign state's immunity from suit in this country does not extend to acts that are private in nature, such as commercial activities, as opposed to those that are public in nature. *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 487, 103 S.Ct. 1962, 1967, 76 L.Ed.2d 81 (1983). The FSIA has a two-fold purpose: "to provide when and how parties can maintain a lawsuit against a foreign state or its entities in the courts of the United States and to provide when a foreign state is entitled to sovereign immunity." *Jones v. Petty–Ray Geophysical Geosource, Inc.,* 954 F.2d 1061, 1064 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 193, 121 L.Ed.2d 136 (1992) (quoting H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 6, reprinted in 1976 U.S.Code Cong. & Admin.News 6604 (1976)). The FSIA provides the sole basis for obtaining jurisdiction over a foreign state in federal court. *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 439, 109 S.Ct. 683, 690, 102 L.Ed.2d 818 (1989). The FSIA also contains the sole and exclusive standards used to resolve sovereign immunity issues. *Rodriguez v. Transnave, Inc.,* 8 F.3d 284, 287 (5th Cir.1993).

 Whether subject matter jurisdiction may be predicated on the FSIA depends upon the application of the Act's substantive provisions. *Jones,* 954 F.2d at 1065. Under 28 U.S.C. § 1330(a), which is the jurisdiction-

---

5. The Court reiterates, however, that the Defendants have not formally asked it to abstain from anything. The Court is merely attempting to make sense out of what appears to be a confused and unfocused motion.

al statute corresponding to the FSIA, federal district courts are vested with subject matter jurisdiction if the foreign state is not entitled to immunity under §§ 1605–1607 of the FSIA or under any applicable international agreement. *Id.* If none of the exceptions to immunity contained in the FSIA applies, then the district court lacks statutory subject matter jurisdiction. *Id.* In a removed action, such as the instant case, where removal is based, at least in part, on the FSIA and 28 U.S.C. § 1330, federal jurisdiction over both foreign and non-foreign parties does not even *attach* until the court determines the foreign entity lacks immunity pursuant to the FSIA. *Id.*

■■■ At the outset of every action in a district court against a foreign state, it is of crucial importance for the court to satisfy itself that one of the exceptions to sovereign immunity applies. *Verlinden,* 461 U.S. at 493–494, 103 S.Ct. at 1971; *Hester Int'l Corp. v. Federal Republic of Nigeria,* 879 F.2d 170, 175 (5th Cir.1989); *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 706 (9th Cir.1992), *cert. denied sub nom., Republic of Argentina v. de Blake,* —— U.S. ——, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993); *Frolova v. Union of Soviet Socialist Republics,* 761 F.2d 370, 373 (7th Cir.1985). While Beta First is raising the defense of foreign sovereign immunity in a somewhat hypothetical posture, given that China North has not even entered an appearance, this Court, ever mindful of prudential concerns, certainly has the authority to examine its own jurisdiction to proceed further in this matter and indeed should do so at this time. The *Verlinden* court emphasized that the district court must address the issue of sovereign immunity, even if, as in the instant case, the foreign state has not even entered an appearance to assert the immunity defense. 461 U.S. at 494 n. 20, 103 S.Ct. at 1971 n. 20; *see also Hester,* 879 F.2d at 175.

■■■ The starting point in the analysis is the general rule under the FSIA that foreign states and their instrumentalities are immune from the jurisdiction of United States courts. 28 U.S.C.A. § 1604; *Moran v. Kingdom of Saudi Arabia,* 27 F.3d 169, 172 (5th Cir.1994). One necessary prelimi-

nary matter the Court must address is whether China North qualifies as a foreign state in the sense of being an instrumentality of the People's Republic of China. 28 U.S.C. § 1603(a). Section 1603(b) of the Act defines an "agency or instrumentality of a foreign state" as any entity:

(1) which is a separate legal person, corporate or otherwise, and

(2) ... a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (d) of this title nor created under the laws of any third country.

Beta First has tendered evidence of China North's sovereign status in the form of a copy of the company's Enterprise Legal Entity Business License and authentication in support of same. The translation of the business license reveals that China North is a state-owned enterprise. The affidavit of the Deputy Director of China North's Legal Department, provided for authentication purposes, establishes that China North is an independent legal entity organized under the laws of the People's Republic of China and wholly-owned by the Chinese state. The Fifth Circuit deemed a similar offer of proof made for the first time at the appellate level sufficient to demonstrate sovereign status. *Atwood Turnkey Drilling, Inc. v. Petroleo Brasileiro, S.A.,* 875 F.2d 1174, 1176 (5th Cir.1989), *cert. denied sub nom., Petroleo Brasileiro, S.A. v. Atwood Turnkey Drilling, Inc.,* 493 U.S. 1075, 110 S.Ct. 1124, 107 L.Ed.2d 1030 (1990). This Court concurs with Beta First that China North falls within the definition set forth above, and as such, it shares the immunity of the Chinese state itself.

■■■ As already noted, a district court can exercise jurisdiction if one of the Act's exceptions to immunity applies. 28 U.S.C. § 1604; *Moran,* 27 F.3d at 172. If the Plaintiff's claim, however, does not fall within one of the exceptions to immunity, the Court lacks jurisdiction both as to subject matter of the claim and the person of China North. *Saudi Arabia v. Nelson,* —— U.S. ——, 113

S.Ct. 1471, 123 L.Ed.2d 47, 58 (1993); *Verlinden,* 461 U.S. at 485 n. 5, 488–489, 103 S.Ct. at 1966 n. 5, 1968–69. Personal jurisdiction exists whenever subject matter jurisdiction exists and service of process has been made in accordance with 28 U.S.C. § 1608. Therefore, both forms of jurisdiction turn on the entitlement to sovereign immunity. 28 U.S.C. § 1330(b).

■ The party claiming immunity bears the burden of persuasion throughout on this issue. However, once the party makes a *prima facie* showing of entitlement to immunity, as has been done in the instant case, the burden shifts to the Plaintiff to show that one of the exceptions to immunity exists. *United States v. Moats,* 961 F.2d 1198, 1205 (5th Cir.1992); *Stena Rederi AB v. Comision de Contratos del Comite,* 923 F.2d 380, 389–390 n. 14 (5th Cir.1991). Plaintiffs have the burden to plead facts pointing to commercial or other activities on behalf of China North that subject it to jurisdiction in the United States by bringing it within an exception to the FSIA. *Arriba, Ltd. v. Pemex,* 962 F.2d 528, 537 n. 17 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 413, 121 L.Ed.2d 337 (1992); *see also Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines,* 965 F.2d 1375, 1383 (5th Cir.1992); *Forsythe v. Saudi Arabian Airlines Corp.,* 885 F.2d 285, 289 n. 6 (5th Cir.1989). The fact remains, however, that the party seeking immunity bears the ultimate burden of proving the nonapplicability of the exceptions raised by its opponent. *Stena Rederi,* 923 F.2d at 390 n. 14.

The exceptions to the FSIA are set out in 28 U.S.C. § 1605. The two exceptions applicable to the factual scenario presented here are the "commercial-activity exception", 28 U.S.C. § 1605(a)–(2), and the "non-commercial tort exception", 28 U.S.C. § 1605(a)–(5). In their response to Beta First's Motion for Dismissal, Plaintiffs invoke § 1605(a)(1), contending that China North has waived its sovereign immunity by operating through Beta First in this country. Plaintiffs cite no authority in support of this waiver argument.

*1. The Commercial–Activity Exception*

■ This exception applies only if the sovereign's commercial activity has a suffi-

cient connection or "jurisdictional nexus" with the United States. *Stena Rederi,* 923 F.2d at 386; *see also United States v. Moats,* 961 F.2d at 1205. The FSIA sets forth the three types of acts satisfying the jurisdictional nexus requirement:

(1) commercial activity carried on in the United States;

(2) an act performed in the United States in connection with a commercial activity carried on outside the United States; and

(3) a commercial activity carried on outside the United States that has a direct effect in the United States.

*Stena Rederi* at 386; 28 U.S.C. § 1605(a)(2). In addition to the above jurisdictional connection, there must also be a connection between the Plaintiff's cause of action and the commercial acts of the sovereign. *Stena Rederi,* 923 F.2d at 386; *Moats,* 961 F.2d at 1205. In other words, the "lawsuit must be based on commercial activities that are connected to the United States in the manner described in the statute." *Moats,* 961 F.2d at 1205; *see also Stena Rederi,* 923 F.2d at 387. Stated another way, the only relevant acts for purposes of jurisdiction under the FSIA are those that form the basis of Plaintiff's complaint. *Stena Rederi,* 923 F.2d at 387–388.

■ Plaintiffs accuse China North of shipping chemical and/or biological agents to the Iraqis, which assisted them in the development of chemical and biological weapons, thus causing a direct effect in the United States since these products are believed to have "impregnated" the veterans suffering from Gulf War syndrome. See Response to Interrogatory no. 3. Since Plaintiffs' claim is for personal injuries allegedly sustained during their service in the Persian Gulf region during the Gulf War and for secondary consequences to their families at home, the only possible jurisdictional nexus category in which these claims could fit is the so-called "clause three" exception: commercial activity carried on outside the United States that has a direct effect in the United States. Indeed, this is the only exception Plaintiffs allude to in their answers to Interrogatories. In order to satisfy this exception, Plaintiffs must be

able to point to a connection between China North's commercial activities abroad and the personal injuries suffered by Plaintiffs that in turn had a direct effect in the United States. *Moats*, 961 F.2d at 1206.

The direct-effect clause in the FSIA encompasses effects resulting from commercial as well as tortious activities. *Zernicek v. Brown & Root, Inc.*, 826 F.2d 415, 418 (5th Cir.1987), *cert. denied sub nom., Zernicek v. Petroleos Mexicanos*, 484 U.S. 1043, 108 S.Ct. 775, 98 L.Ed.2d 862 (1988). Unfortunately for Plaintiffs, however, courts considering claims for personal injury sustained in foreign territories have consistently held subsequent physical suffering and consequential damages insufficient to constitute a "direct effect in the United States" for purposes of abrogating sovereign immunity. *Zernicek*, 826 F.2d at 418. In *Zernicek*, the plaintiff was exposed to radioactive materials while working on a project in Mexico, and he continued to suffer from the effects of exposure after he returned to the United States. After noting that the same standard for direct effects applied in both personal injury and financial loss cases, the *Zernicek* court made the following pronouncement regarding direct effects:

> The distinction between an effect that is "direct" and one that is indirect is not quantitative and cannot be programmed into a computer. The district court properly followed the cases holding that the eventual effect in the United States of the personal injury or death of an American citizen while abroad is not direct within the meaning of the Act even if the foreign government agency might foresee that a United States citizen might be injured while travelling or working in its territory.

*Zernicek*, 826 F.2d at 419.

In a more recent opinion addressing direct effects under this exception to the FSIA, the Court of Appeals for the District of Columbia Circuit expressed the concern that if lingering effects of a personal injury suffered overseas are deemed sufficient to satisfy the direct-effect requirement of the FSIA, then the commercial activity exception would largely eviscerate the FSIA'S provision of immunity for foreign states. *Princz v. Federal Repub-*

*lic of Germany*, 26 F.3d 1166, 1173 (D.C.Cir. 1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 923, 130 L.Ed.2d 803 (1995). The *Princz* court, citing *Zernicek* and other authorities, noted that courts applying the FSIA have uniformly rejected the argument that a personal injury suffered overseas produces a direct effect in the United States when the injured person returns home. *Id.; see also Martin v. Republic of South Africa*, 836 F.2d 91, 94–95 (2d Cir.1987) (ruling in conformity with other courts rejecting continued physical suffering and consequential damages that persisted when the plaintiff returned to the United States as a direct effect in the United States); *Yugoexport, Inc. v. Thai Airways Int'l, Ltd.*, 749 F.2d 1373, 1375 (9th Cir.1984), *cert. denied,* 471 U.S. 1101, 105 S.Ct. 2326, 85 L.Ed.2d 844 (1985). In claiming exposure while in the Persian Gulf region and damages from continued suffering at home, Plaintiffs are asserting a theory that is doomed to failure under clause three of § 1605(a)(2).

As for secondary consequences to Plaintiffs' family members, just as the continuing impact on an injured party who has returned to the United States is not considered a direct effect of the overseas injury, neither is the impact on his or her relatives. This Court found that the requisite direct effect to be absent in *Jones*, 722 F.Supp. at 347. The emotional injury and stress caused to relatives was not a direct consequence of the wrongful act where the wrongful act that was the basis of the suit occurred outside the United States. *Id.* Given that the family members were allegedly exposed after the veterans returned from the Gulf War and given the stringency of the law in regard to what will constitute a direct effect in the United States, the secondary consequences to the family members in the instant case cannot be considered a direct effect for the purposes of the "clause three" commercial activities exception to sovereign immunity.

Under the applicable law and the facts of this case, the commercial activities exception affords no basis for overcoming China North's immunity from suit.

*2. The Non-commercial Tort Exception*

 This exception provides immunity in a case "in which money damages are

sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state ...". 28 U.S.C. § 1605(a)(5). Congress' main purpose in enacting section 1605(a)(5) was to eliminate a foreign state's immunity for traffic accidents and other torts committed in the United States, for which liability is imposed under domestic tort law. *Amerada Hess*, 488 U.S. at 439–440, 109 S.Ct. at 690. Section 1605(a)(5) is expressly limited to those cases in which the actual injury occurs in the United States. *Id.* at 439–41, 109 S.Ct. at 691–92. Although the statute is silent as to where the noncommercial tort must occur, *In re Sedco, Inc.*, 543 F.Supp. 561, 567 (S.D.Tex.1982), *vacated on other grounds*, 610 F.Supp. 306 (S.D.Tex. 1984), the rule that has emerged from the court decisions is that not only must the injury or damage occur here, the tortious act or omission must also occur here. *Amerada Hess*, 488 U.S. at 441, 109 S.Ct. at 691; *Jones*, 954 F.2d at 1065; *Cicippio v. Islamic Republic of Iran*, 30 F.3d 164, 169 (D.C.Cir. 1994); *Frolova*, 761 F.2d at 379 (citing explicit legislative history indicating Congress intended the tortious act or omission, as well as the injury, to occur in the United States); *Asociacion de Reclamantes v. United Mexican States*, 735 F.2d 1517, 1524–25 (D.C.Cir. 1984), *cert. denied*, 470 U.S. 1051, 105 S.Ct. 1751, 84 L.Ed.2d 815 (1985); *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 842–43 (D.C.Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984); *Olsen by Sheldon v. Government of Mexico*, 729 F.2d 641, 645–46 (9th Cir.), *cert. denied sub nom. United Mexican States v. Olsen*, 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984); *Sedco*, 543 F.Supp. at 567. In construing the statute, the courts have seized on the key point that when Congress intended to provide jurisdiction for acts outside this country having an effect in within its borders, it did so explicitly, as in § 1605(a)(2). *Amerada Hess*, 488 U.S. at 441, 109 S.Ct. at 692; *Frolova*, 761 F.2d at 379–380; *see also Persinger*, 729 F.2d at 843.

It is clear that the alleged tort committed by China North, the exact nature of which remains rather vague and shadowy, did not occur wholly in this country. The allegations are that the veterans were exposed to the harmful substances during their time of service in the Persian Gulf. Plaintiffs have not pleaded facts indicating that the entire tort occurred in the United States so as to bring them within the noncommercial tort exception, as is their burden once the defendant shows the potential entitlement to immunity. *Arriba*, 962 F.2d at 537 n. 17. The noncommercial tort exception affords no basis for overcoming China North's immunity from suit.

In their response to the motion of Defendant Beta First, Plaintiffs propose that China North may have waived its sovereign immunity by operating through Beta First and registering Beta First to do business in Texas. Plaintiffs alternatively assert that Beta First's activities may have waived China North's immunity. As noted above, Plaintiffs cite no authority for this position.

Another obvious exception to sovereign immunity set forth in the FSIA is the explicit or implicit waiver of same. 28 U.S.C.A. § 1605(a)(1). The implicit waiver clause of 1605(a)(1) has been very narrowly construed. *Transnave*, 8 F.3d at 287. The legislative history of the FSIA suggests that implicit waivers are ordinarily found in three situations: (1) the foreign state agrees to arbitration in another country; (2) the foreign state agrees that contract is governed by laws of particular country; and (3) the foreign state files responsive pleading without raising the immunity defense. *Id.* Courts have shown great reluctance to stray beyond these three examples of implicit waiver. *Id.* Courts will rarely find that a nation has waived its sovereign immunity without strong evidence that waiver was what the state intended. *Id.; Frolova*, 761 F.2d at 377. As for Plaintiffs' argument that Beta First has waived China North's immunity, case law dictates that the focus of analysis in determining whether there has been implicit waiver falls on the acts of the foreign sovereign, not on the acts of others. *Zernicek*, 614 F.Supp. at 412. Plaintiffs have made a bald pronouncement in regard to China North's waiver of immunity, but they have failed to

shore up their position with *any* facts pointing to the waiver or authorities in support of their theory of waiver.

■■■■ The final argument advanced by Plaintiffs is that a ruling on this issue would be premature given that China North has not appeared and Plaintiffs have not been able to conduct discovery. The general rule is that a plaintiff be allowed limited discovery on a jurisdictional issue. *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332 (2d Cir.1990). Both Beta North and Plaintiffs have obviously conducted such discovery, as indicated by the attachments to the motion and response. Given that one of the bases for removal jurisdiction was 28 U.S.C.A. § 1330, thus raising the issue of the role of the FSIA, and given that an alter ego theory of liability has been alleged, thus leading to overlapping discovery as to Beta First and China North, this Court finds no extreme prejudice to Plaintiffs from a ruling at this juncture on the jurisdictional issue. Secondly, this Court is duty-bound to consider the jurisdictional issue of sovereign immunity at the earliest opportunity, even when the state has not entered an appearance to raise this defense. *Verlinden*, 461 U.S. at 494 n. 20, 103 S.Ct. at 1971 n. 20.

Having found that no exception to the FSIA is applicable to this case, this Court necessarily finds it lacks subject matter jurisdiction in this regard. As a result, the Court has no choice under 28 U.S.C. 1447(c) but to remand this case to the state court where it was originally filed. Consequently, the Court finds that the above-captioned cause of action is hereby **REMANDED** to the 23rd Judicial District Court of Brazoria County, Texas, from whence it was removed, for lack of subject matter jurisdiction. In taking this action, however, the Court is expressly refusing to rule on any other aspect of this case, including any pending, ancillary, or dispositive motion or any motion for sanctions. Instead, all further determinations concerning this case are expressly left for the decision of the able state court to which it will be remanded.

■■■ However, this Court cannot help but note that it has spent enormous resources in undertaking its protracted consideration of the parties' many jurisdictional motions in this case, and has consumed literally hundreds of hours of work by four briefing attorneys to research the many motions and arguments filed by the parties. Many of the same motions and arguments will no doubt be made in the future to the able state court remand judge, and while having complete confidence in and immense respect for the competence of that court, in the respectful interest of sharing its own judicial insights, and perhaps saving the state court judge from having to expend an equal measure of that court's own precious and over-taxed resources on this complex matter, the Court here presents its conclusions on the remaining issues in this Motion to Dismiss in the attached "Appendix," which is not made a part of this Order for any purpose.[6]

6. This Court is, of course, very aware and respectful of the prohibition on Article III courts from issuing advisory opinions. Usually, however, such opinions address matters that are not justiciable, ripe, or are involved in disputes between parties that are not truly adverse. *See McKinney v. Gannett Co.*, 694 F.2d 1240, 1251 (10th Cir.1982). Likewise, federal courts may not advise Congress on the constitutionality of proposed legislation. *See, e.g., Muskrat v. United States*, 219 U.S. 346, 31 S.Ct. 250, 55 L.Ed. 246 (1911); *United States v. Fruehauf*, 365 U.S. 146, 157, 81 S.Ct. 547, 553, 5 L.Ed.2d 476 (1961). Clearly, none of these prohibited situations is fully present in this case.

Instead, the Court is motivated in this matter *solely* by the prudential considerations of judicial economy and efficiency. As stated above, this Court has drawn on four briefing attorneys to research every aspect of the voluminous number of motions presented to it. This expense of time and energy was required in part by the sheer size of this case. Unfortunately, however, it was also required by the inadequacy of the briefing presented to it by the various counsel in the case, some of whom have presented legal arguments and cites that have been, on occasion, highly partial, sloppy, or inaccurate.

This Court currently has one of the heaviest civil dockets in the country, and it is intensely sensitive to the reality that the able state remand court that will inherit this case is at least as busy as this Court itself. However, the state court does not have the briefing resources this Court was able to draw on in this matter. Consequently, the Court believes that it may be of help to the state court to see what the Court has learned about this case in the course of its research, almost all of which was completed before the Court finally determined that it lacked subject matter jurisdiction over this case.

*Conclusion*

Having considered all aspects of this case with great care, the Court determines that it is utterly lacking in subject matter jurisdiction in this matter. Consequently, it is hereby **ORDERED, ADJUDGED, AND DECREED** that the above-captioned cause of action is **REMANDED** for lack of subject matter jurisdiction to the 23rd Judicial District Court of Brazoria County, Texas, pursuant to 28 U.S.C. § 1447(c). In doing so, the Court expressly refuses to rule on any other pending Motion in this case. Instead, it leaves all further determination of every kind to the state court to which the case is remanded. It is further **ORDERED** that the parties file no further pleadings in this Court, including motions to reconsider and the like. Instead, the parties are instructed to seek any further relief to which they feel themselves entitled in the courts of the State of Texas, as may be appropriate in due course.[7] Any relief not specifically granted herein is **DENIED.** All parties are to bear their or its own taxable costs incurred in this matter to date.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

Pursuant to the Court's Order entered this date, the above-captioned cause of action is hereby **REMANDED** to the 23rd Judicial District Court of Brazoria County, Texas, for want of subject matter jurisdiction.

**THIS IS A FINAL ORDER.**

**IT IS SO ORDERED.**

The Court hastens to emphasize, however, that its Appendix is *not* part of its Order, is not included in the publication of this Order, and is not binding on any party in this case or, needless to say, on the state judge, who is free to accept or disregard any portion of the Appendix as he or she sees fit.

7. *See* 28 U.S.C. § 1447(d) (denying appellate review of a remand order based on lack of subject matter jurisdiction).